# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY FLOWERS, | CV F   01-5821 AWI DLB HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| ANTHONY LaMARQUE, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## PROCEDURAL BACKGROUND[1]

On March 12, 1998, an information was filed in the Fresno County Superior Court, charging Petitioner in Count One with car jacking (Cal. Pen. Code [2]§ 215) while armed with a firearm (§ 12022.5(a)(1)); in Count Two with kidnapping in the commission of car jacking (§ 209.5(a)); in Count Three with evading a police officer while driving recklessly (Veh. Code § 2800.2); and in Count Four with resisting arrest (§ 148(a)). (CT[3] 42-44.)

///

---

[1] This information is derived from Respondent's original answer, filed July 3, 2002, the petition for writ of habeas corpus, as well as the Court Transcripts. (Court Docs. 1, 16.)

[2] All further references are to the California Penal Code unless otherwise indicated.

[3] "CT" refers to Clerk's Transcripts.

1

A preliminary hearing was held on January 7, 1998. (CT 1-41.) Petitioner entered a plea of not guilty on March 12, 1998. (CT 45.)

On April 20, 1998, Petitioner withdrew his guilty plea and entered a plea of guilty to count two of the information,1 kidnapping in the commission of car jacking (§ 209.5(a)). As part of the plea agreement, all remaining counts were dismissed.

On May 26, 1998, the Court sentenced Petitioner to "life in state prison, with the possibility of parole," for violating § 209.5(a), and ordered Petitioner to pay restitution. (CT 59-60.) The minute order and abstract of judgment for the order stated however, that Petitioner was sentenced to 25 years to life with the possibility of parole. (Id.)

Petitioner filed a notice of appeal with the California Court of Appeal, Fifth Appellate District on March 8, 1999. (Respondent's Exhibit A, attached to Answer, Court Doc. 16.)

On April 9, 1999, Petitioner filed a petition for writ of habeas corpus in the Court of Appeal. The Court of Appeal consolidated the petition with the direct appeal.

On May 26, 2000, the Court of Appeal affirmed the judgment of the trial court.[4]

No petition for review of this decision was filed with the California Supreme Court.

On October 20, 2000, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court. The petition was denied on May 23, 2001.

On June 27, 2001, Petitioner filed the instant petition for writ of habeas corpus. On July 3, 2002, Respondent filed an answer to the petition, and Petitioner filed a traverse on August 13, 2002.

On March 24, 2003, the undersigned issued a Recommendation that the petition for writ of habeas corpus be DENIED on the merits. Petitioner submitted objections to the Recommendation on May 29, 2003.

On June 25, 2003, Petitioner moved to hold the petition in abeyance, contending that he had discovered new evidence and was exhausting the state court remedies.

---

[4] The Court of Appeal noted that the original abstract of judgment contained a clerical error and that the trial court had previously corrected the abstract of judgment to reflect the proper sentence of "life with the possibility of parole." Respondent's Exhibit C, attached to Answer, Court Doc. 16.

2

The District Court, on February 24, 2004, granted the Motion to Stay the case.

On March 8, 2004, Petitioner moved to lift the stay and amend the petition. Respondent filed an opposition to the motion on March 22, 2004.

On April 1, 2004, the Court granted the request to lift the stay on April 1, 2004. Petitioner filed a notice of motion and motion to submit reply brief to the opposition on April 7, 2004.

Respondent filed supplemental objections to the motion to amend on April 22, 2004.

On June 2, 2004, the undersigned granted Petitioner request to amend the petition to include the new evidence of trial counsel's notes in support of the ineffective assistance of counsel claim. The recommendation of March 24, 2003, was vacated and Respondent was directed to file a supplemental answer and Petitioner to file a supplemental traverse. (Court Doc. 38.)

Respondent filed a supplemental answer on August 2, 2004, and Petitioner filed a supplemental traverse on September 24, 2004.

## STATEMENT OF FACTS[5]

On October 20, 1997, at approximately 10 p.m., Paul Parkey was sitting in his car listening to the radio, when two men, including [Petitioner], approached him. Both men had their faces covered, and were wearing hoods. [Petitioner] pulled out a gun, pointed it at Parkey, and told Parkey to "break yourself." Parkey got out of the car, and handed over his wallet. The two men asked for his car keys, and he gave those over as well.

Parkey was taken around to the back of his car, and told to open the trunk and jump in. Parkey, however, could not fit in the trunk, so the two men told him to get in the back seat of the car, where [Petitioner] sat next to him, holding the gun of Parkey. While in the back seat, [Petitioner] described the gun to Parkey as a nine-millimeter extended clip, and told Parkey "it would be a shame if it went off." [Petitioner] asked Parkey if he had any jewelry, what other items he had, and what kind of shoes he was wearing. Parkey handed his backpack over to [Petitioner].

Parkey estimated he was in the car for 20 minutes, during which he was told to put his head down, while [Petitioner] would periodically tap the gun on Parkey's head. Eventually the car stopped on a country road, and Parkey was told to get out. After exiting the car, [Petitioner] told Parkey to "strip." Parkey took off his clothes, and threw them into the back seat of the car. He started walking

---

[5] The following summary of facts are taken from the opinion of the California Court of Appeal, Fifth Appellate District appearing as Exhibit C, of the Answer to the Petition for Writ of Habeas Corpus. The Court finds the state Court of Appeal's summary is a correct and fair summary of the facts of the case.

the same direction as the car was pointed, but was told, "don't think you're going to that house,"[6] so Parkey crossed in front of the car, and walked into the open field next to the car.

Once the car was out of sight, Parkey ran to one of the nearby houses, and asked a female resident for help. A Fresno deputy sheriff arrived approximately 10 minutes later, and Parkey was taken to the police department to give a statement. Later that night, Parkey identified [Petitioner].

Fresno police officer Dave Madrigal was on duty on October 20, 1997, when he noticed a car revving its engine and squealing its tires. Madrigal stopped the vehicle, and noticed two occupants inside. Madrigal's partner ordered the driver to shut off the engine, but the car immediately went into gear and drove off. By the time Madrigal began following the car, another police vehicle was also following. The car went through a 30-miles-per-hour zone at speeds of 65 miles per hour, running various stop signs. The car turned its lights off, and turned eastbound onto Jensen Avenue, where it approached speeds of 90 miles per hour. Eventually, because of the speeds involved, Madrigal's commander called off the pursuit. Madrigal subsequently heard over the radio that the car was picked up in another area, and was involved in an accident on a freeway on-ramp.

Fresno police officer Todd Frazier spoke with [Petitioner] the night of the incident. Frazier read [Petitioner] his Miranda rights, after which [Petitioner] indicated a desire to speak with Frazier. [Petitioner] told Frazier he was there "when it went down." [Petitioner] acknowledged driving the car, and running red lights while being chased by police.!(CT 38)! [Petitioner] told Frazier he drove away from Madrigal because he had a warrant out for his arrest.

(Exhibit C, attached to Answer, Opinion, at 3-4, Court Doc. 16.)

DISCUSSION

A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting

---

[6] Parkey testified there were two houses near the area where the car parked.

4

Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.    Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness

by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Purkett v. Elem</u>, 514 U.S. 765, 115 S.Ct. 1769 (1995); <u>Thompson v. Keohane</u>, 516 U.S. 99, 116 S.Ct. 457 (1995); <u>Langford v. Day</u>, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.   <u>Ineffective Assistance of Counsel</u>

Petitioner contends that he received ineffective assistance of counsel by his advisement to pled guilty to a life term in state prison. Petitioner contends that counsel lead him to believe that a life term meant 7 years to life which would make Petitioner mandatorily eligible for parole after 7 years. Petitioner contends that the promise of eligibility for parole after 7 years was premised on Penal Code 3046, and was a motivating factor causing Petitioner to waive his trial rights and pled guilty. Petitioner further alleges that counsel was deficient for failing to advise Petitioner to accept an offer of life with a possibility of parole in seven years rather than a 14-year determinate term. (Pet.'s Motion to Lift Stay, Decl. at iii, ¶ 12, filed March 8, 2004, Court Doc. 32.) In support of this claim Petitioner has submitted a copy of a log sheet from his case file. (Pet.'s Reply to Opp. To Motion to Amend, Exhibit A, filed April 7, 2004, Court Doc. 35.)

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). <u>Canales v. Roe</u>, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); <u>Lowry v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>Strickland</u>, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. <u>Id</u>. at 688; <u>United States v. Quintero-Barraza</u>, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable

///

professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. The court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994). More precisely, petitioner must show that (1) his attorney's performance was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. This two-part standard applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of a guilty plea, a petitioner must show that (1) his counsel failed to provide reasonable competent advice, and (2) there is a reasonable probability that, but for counsel's errors, he would not have plead guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984). Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail.

Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

1. Mis-Advisement Regarding Plea Bargain

Petitioner's claims of inadequate advisement are without merit. In the second declaration submitted by defense counsel, counsel declares that he met with Petitioner on four separate occasions, discussed the charges and range of sentences with Petitioner at each meeting, and Petitioner indicated that he understood the explanations given. (Exhibit E, at 1-2, attached to Court Doc. 16.) Counsel further states that due to the abundant evidence against Petitioner, he would almost certainly have been convicted of more than the one count that he pled guilty to.

7

1  (Id. at 1-3.) Counsel explained to Petitioner that if he pled guilty, "he would be eligible for
2  parole after he had served seven years." (Id. at 3.) This explanation is consistent with the crime
3  Petitioner pled guilty to and the actual sentence imposed.[7] Thus, because counsel did not commit
4  any error, Petitioner fails to prove that counsel failed to provide reasonable competent advice
5  under the first prong of the Strickland test.

6  Even assuming counsel did incompetently advise Petitioner, the trial court explained in
7  detail the consequences of entering a guilty plea to Petitioner. First, the court discussed the plea
8  bargain, specifically, the dropping of all remaining counts if Petitioner pled guilty to count two,
9  describing count two as a "life-top offense." (RT of April 20, 1998 change of plea hearing, at 1.)
10 The court then asked Petitioner if he understood this. Petitioner replied that he did. (Id.) The
11 trial court then asked Petitioner if he had discussed the plea with his attorney, and explained,
12 "you understand the maximum sentence in this case would be life?" Whether or not you would
13 serve that term or how many years you would actually serve would be up to the California
14 Department of Corrections. The maximum would be for the rest of your life. You understand
15 that?" (Id. at 2.) The court went on to explain that whatever speculation counsel had made as to
16 the actual time that Petitioner would serve, *was no guarantee*. (Id.) "The only guarantee is that
17 you would serve no more than life in state prison. Understood.?" (Id.) To which Petitioner
18 again responded affirmatively. (Id.)

19 The trial court then read the plea agreement, and again asked Petitioner if he understood
20 what a life term meant. (Id. at 3-4.) Petitioner replied that he did. (Id. at 4.) After discussing
21 the rights that Petitioner would be giving up by entering a guilty plea, the court informed

---

[7] Cal. Penal Code § 209.5 states:
  Any person who, during the commission of a car jacking and in order to facilitate the commission of the car jacking, kidnaps another person who is not a principal in the commission of the car jacking shall be punished by imprisonment in the state prison for life with the possibility of parole.
Cal. Penal Code § 3046 defines life with the possibility of parole as follows:
  No prisoner imprisoned under a life sentence may be paroled until he or she has served the greater of the following: 1) A term of at least seven calendar years, or 2) a term as established pursuant to any other provision of law that establishes a minimum term or minimum period of confinement under a life sentence before eligibility for parole.

8

Petitioner that the only sentence he could receive for the offense was "life with possibility of parole." (Id. at 5.) Petitioner stated that he understood this. (Id. at 6.) After further discussion, the court accepted Petitioner's plea and found it to be "knowingly, intelligently and voluntarily made." (Id. at 9.)

Petitioner further argues that counsel assured him that a life sentence on count two would result in a guarantee parole release in seven years and that he would not have pled guilty had he not relied on counsel's erroneous advice. The record establishes that Petitioner was made fully aware that his guilty plea would not guarantee a parole date, particularly a seven year parole date. In counsel's second declaration, dated June 25, 1999, counsel declares that:

> As to the life term for the underlying offense, I advised [Petitioner] that he would be eligible for parole after he had served seven years. I advised him that his actual release date would be determined by the parole board. I advised him that his performance in the institution would be an important factor in the board's decision. Any appearance by the victim or someone from the D.A.'s office at his parole hearing would also be important. I advised him that his age would be a factor in his favor. I did not advise [Petitioner], nor have I ever advised any client in [Petitioner's] situation, that he was assured of release after seven years, or after any other period of time.

(Exhibit E, attached to Answer, Court Doc. 16, at 3.)

As previously stated above, the trial court specifically informed Petitioner that he was receiving a life sentence and that there was no guarantee as to what actual time Petitioner would serve. More specifically, counsel's speculation as to what time Petitioner would actually serve was *no guarantee*. Petitioner indicated that he understood these conditions and proceeded to pled guilty. Thus, the record unequivocally establishes that Petitioner understood the consequences of his guilty plea and that there was no guarantee that he would be released on parole after a set amount of time was served.

### 2. Improper Sentence

To the extent Petitioner argues that he was sentenced to 25 years to life, rather than the straight life term that he expected, the argument is without merit. At Petitioner's sentencing hearing, the trial court sentenced Petitioner to a straight life term. The judge stated, "I'm ordering you committed to the California Department of Corrections, sir, for the term of life in state prison, with the possibility of parole." (CT 70.) A clerical error resulted in a different

sentence being entered into the sentencing order. This error was remedied however, by an amended minute order and corrected abstract of judgment filed by the trial court clerk on April 26, 1999. (CTS[8] 18.) The clerical error in recording the sentence was not something that counsel had any control of and thus, would not suffice to meet either the first or second prong of the Strickland test.

　　　　3.　　Counsel's Alleged Advisement to Accept Life Term Versus 14-Year Determinate Term

As a supplement to Petitioner's initial ineffective assistance claim, Petitioner alleges that counsel was deficient for failing to advise Petitioner to accept an offer of life with a possibility of parole in seven years rather than a 14-year determinate term. (Pet.'s Motion to Lift Stay, Decl. at iii, ¶ 12, filed March 8, 2004, Court Doc. 32.) In support of this claim Petitioner has submitted a copy of a log sheet from his case file. (Pet.'s Reply to Opp. To Motion to Amend, Exhibit A, filed April 7, 2004, Court Doc. 35.)

　　　　a.　　Procedural Default

Respondent contends that Petitioner's supplemental claim that counsel was ineffective for advising him to take the life sentence with the possibility of parole rather than a 14-year determinate term, is procedurally barred based on the California Supreme Court's citation to In re Clark, 5 Cal.4th 750 (1993) and In re Robbins, 18 Cal.4th 770, 780 (1998). Respondent's contention has merit.

A federal court will not review a petitioner's claims if the state court has denied relief of those claims pursuant to a state law that is independent of federal law and adequate to support the judgment. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Coleman v. Thompson, 501 U.S. 722, 729-30 (1989). This doctrine of procedural default is based on the concerns of comity and federalism. Coleman, 501 U.S. at 730-32.

There are limitations as to when a federal court should invoke procedural default and refuse to evaluate the merits of a claim because the petitioner violated a state's procedural rules. Procedural default can only block a claim in federal court if the state court "clearly and expressly

---

[8] "CTS" refers to the Supplemental Clerk's Transcript.

10

states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989). For California Supreme Court decisions, this means the Court must specifically have stated that it denied relief on a procedural ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Acosta-Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir. 1993); Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1991). If the California Supreme Court denies a petitioner's claims without any comment or citation, the federal court must consider that it is a decision on the merits. Hunter v. Aispuro, 982 F.2d at 347-48.

In addition, a federal court may only impose a procedural bar on claims if the procedural rule that the state used to deny relief is "firmly established and regularly followed." O'Dell v. Thompson, 502 U.S. 995, 998 (1991) (statement of Blackmun joined by Stevens and O'Connor respecting the denial of certiorari); Ford v. Georgia, 498 U.S. 411, 423-24 (1991); James v. Kentucky, 466 U.S. 341, 348-51 (1984). The state procedural rule used must be clear, consistently applied, and well-established at the time of the petitioner's purported default. Fields v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997); Calderon v. United States Dist. Court (Bean), 96 F.3d 112, 129 (9th Cir. 1996), *cert. denied,* 117 S.Ct. 1569.

"For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal law." LaCrosse v. Kernan, 244 F.3d 702, 704 (2001), *citing* Michigan v. Long, 463 U.S. 1032, 1040-41 (1983); Morales v. Calderon, 85 F.3d 1387, 1393 (9th Cir. 1996), *quoting* Coleman, 501 U.S. at 735 ("Federal habeas review is not barred if the state decision 'fairly appears to rest primarily on federal law, or to be interwoven with federal law.'") "A state law is so interwoven if 'the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed.'" Park, 202 F.3d at 1152, *quoting* Ake v. Oklahoma, 470 U.S. 68, 75 (1985). "[U]nless the state court makes clear that it is resting its decision denying relief on an independent and adequate state ground, it is presumed that the state denial was based at least in part upon federal grounds, and the petitioner may seek relief in federal court.'" LaCrosse, 244 F.3d at 704.

///

To be deemed adequate, the state law ground for decision must be well-established and consistently applied. Poland v. Stewart, 169 F.3d 573, 577 (9th Cir. 1999) ("A state procedural rule constitutes an adequate bar to federal court review if it was 'firmly established and regularly followed' at the time it was applied by the state court."), *quoting* Ford v. Georgia, 498 U.S. 411, 424, (1991).

In Clark, the California Supreme Court set forth the California rule barring successive presentations of previously denied claims. In re Clark, 5 Cal.4th 750, 760, 21 Cal.Rptr.2d 509, 521 (1993). The court held that to entertain the merits of a successive petition would be inconsistent with the its recognition that the delayed and repetitious presentation of claims is an abuse of the writ. Id. The Ninth Circuit has found that imposition of a default by California after the 1998 Robbins decision is independent of federal law. Bennett v. Mueller, 322 F.3d 573, 582 (9th Cir. 2003). The California Supreme Court's rejection of Petitioner's claim did not invoke federal law. As such, it is independent of federal law. See In re Robbins, 18 Cal.4th 770, 811 (1998); Coleman, 501 U.S. at 736.

Respondent also argues the state procedural bar is adequate to support the judgment, and Petitioner has not demonstrated otherwise. Petitioner exhausted the instant claim in a habeas petition on May 19, 2003, almost three years after the finality of conviction. (Pet.'s Motion to Lift Stay, first exhibit, filed March 8, 2004, Court Doc. 31.) On January 28, 2004, the California Supreme Court denied the petition as untimely with citations to In re Clark, 5 Cal.4th 570 (1993) and In re Robbins, 18 Cal.4th 770, 780 (1998). Petitioner filed a habeas corpus petition in the California Supreme Court on October 20, 2000, but that petition did not contain the instant claim. (Exhibit D, attached to Respondent's answer, Court Doc. 16.) Petitioner did not present the instant claim to the California Supreme Court until May 19, 2003, and yet his direct appeal became final on July 5, 2000, which is 40 days after the Court of Appeal affirmed the judgment. As Respondent submits, a significant amount of time – approximately two and one-half years – elapsed between when Petitioner should have presented the instant claim (October 20, 2000) and when he belatedly presented the claim (May 19, 2003). As set forth by Respondent in its supplemental answer, at the time of Petitioner's 2000 default, California's timeliness rule was

clear, well-established, and consistently applied.

Because the procedural bar invoked by the California Supreme Court is independent of federal law and adequate to support the judgment, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." Noltie v. Peterson, 9 F.3d 802, 804-805 (9th Cir. 1993); Coleman, 501 U.S. at 750, 111 S.Ct. 2456; Park, 202 F.3d at 1150.

### b. Exceptions to Procedural Default

Where, as here, the court finds an independent and adequate state procedural ground, federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Because Petitioner is not, and cannot, demonstrate actual innocence, he must assert cause and prejudice to excuse his procedural default.[9]

#### 1. Cause and Prejudice/Miscarriage of Justice

The Court may reach the merits of procedurally defaulted claims if the petitioner can show cause and prejudice to excuse his default. The cause standard requires the petitioner to show that "some objective factor external to the defense" impeded his efforts to comply with the state's procedural rule, Murray v. Carrier, 477 U.S. 478, 488 (1986), or to establish constitutionally ineffective assistance of counsel, McClesky v. Zant, 499 U.S. 467, 494 (1991). However, attorney error short of ineffective assistance of counsel does not constitute cause and will not excuse a procedural default. Id. To satisfy the prejudice prong of the cause and prejudice test, the Petitioner must show actual prejudice resulting from the errors of which he complains. Id.

///

---

[9] A fundamental miscarriage of justice must be based on actual innocence of the crime for which one was convicted. Sawyer v. Whitley, 505 U.S. 333, 339 (1992). In this instance, Petitioner pled guilty to the charged offense and does not, nor can he, assert actual innocence.

In his traverse, Petitioner argues that because counsel was constitutionally ineffective this is sufficient cause to excuse any procedural default.  That is insufficient to demonstrate cause.  "To constitute cause for procedural default of a federal habeas claim, the constitutional claim of ineffective assistance of counsel must first have been presented to the state courts as an independent claim."  Cockett v. Ray, 333 F.3d 938, 943 (9th Cir. 2003) (citing Murray v. Carrier, 477 U.S. 478, 488-89 (1986).  Because Petitioner's supplement to his ineffective assistance of counsel claim was procedurally defaulted, trial counsel's performance cannot provide the basis for cause.  As such, the claim is procedurally defaulted.  In the alternative, as Respondent argues there is no merit to his claim.

Petitioner's amendment to the original ineffective assistance of counsel claim argues that counsel was deficient because he advised Petitioner to accept an offer of life with a possibility of parole in seven years rather than a 14-year determinate term.  (Pet.'s Motion to Lift Stay, Decl. at iii, ¶ 12, filed March 8, 2004.)  Petitioner cites to a log sheet from his case file.  (Pet.'s Reply to Opp. To Motion to Amend, Exhibit A, filed April 7, 2004, Court Doc. 35.)

In response to Petitioner's claim, Respondent submits a third declaration by defense counsel who declares that Petitioner was never given the option of a determinate or indeterminate sentence term.  With regard to the log sheet, counsel declares the following:

> According to the docket sheet, [Petitioner's] case was originally set for preliminary examination December 3, 1997.  I recognize the handwriting and initials for this date as those of attorney Mark Broughton.  The docket sheet reads as follows: "OFFER: 12-3 @ PH - 215 + 12022.5 - 19 yr. open thru PH only. [At the time, the term for personal use of a firearm in connection with a carjacking was 4, 5, or 10 years.] If rejected, DA will prosecute 207 for 211 = life term."  The notes for that date go on to say that the "offer above extended," and that the preliminary examination was continued to December 17, 1997, so that defense counsel could investigate and prepare.

(Exhibit A, attached to Supplemental Answer, Court Doc. 39, at 1-2.)

Thus, the log sheet indicates that a 19-year term was open until the time of the preliminary hearing.  (Id. at ¶ 3.)  The March 19, 1998, log sheet entry indicates that the offer was for Petitioner to plead guilty to count 1 of the first amended information.  No other count was being offered.  As Respondent submits, a 14-year sentence was an allowable sentence for the

14

charges in count 1, however, a sentence of life with the possibility of parole was not possible. A "life with" sentence was not within the range of punishment authorized by state law for the crime and enhancement charged in count 1 - carjacking. Cal. Penal Code §§ 215(b), 12022.5(a)(2). The charge that carried a "life with" sentence was count 2 - kidnapping during carjacking. Petitioner has not demonstrated that an offer was made at the March 19, 1999, trial confirmation hearing as to count 2 and the log sheet does not support this contention. Thus, there is no support in the record for Petitioner's claim that defense counsel urged Petitioner to accept a "life with" sentence rather than a 14-year determinate sentence. As defense counsel's third declaration indicates, a counter-offer would have been necessary to put count 2 on the table. (Exhibit A, attached to Supplemental Answer, at ¶ 8.) Counsel further declares that he did not believe that he advised Petitioner to opt for an indeterminate term on that date, and if he did give him that advice, *he didn't take it.* (Id.)

Moreover, even if counsel did recommend a life term versus a 14-year determinate sentence, it was a reasonable choice. Pursuant to California Penal Code section 3046, "life with" results in parole eligibility in only seven years. People v. Jefferson, 21 Cal.4th 86, 90 (1999). However, a defendant convicted of carjacking (Petitioner's count 1), with an arming enhancement and sentenced to 14 years would not be eligible for parole for almost 12 years because of the limitation on credits for violent felonies. Cal. Penal Code § 2933.1(a) (limiting credits to 15% for violent felonies), 667.5(c)(8) & (17) (enumerating as "violent" all felonies involving arming within the meaning of § 12022.5 as well as carjackings involving weapon use). As Respondent submits, the much more rapid eligibility for parole achieved under the "life with" sentence provides a reasonable basis for an attorney to recommend that sentence over a 14-year determinate term. Because there was no choice between a "life with" sentence or a 14-year determinate term, Petitioner has not, and cannot, demonstrate any resulting prejudice and his claim fails.

D.     Due Process - Involuntary Guilty Plea

To the extent Petitioner is attempting to raise an independent due process claim that his guilty plea was involuntary, it too fails on the merits.

The United States Supreme Court, in Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602 (1973), held that when "a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea

By pleading guilty, a defendant waives the right to a jury trial, to confront one's accusers, to compel the attendance of witnesses, and generally to challenge the evidence that he committed the offense. See Boykin, 395 U.S. 238, 89 S.Ct. 1709. Typically, one who enters a valid guilty plea, cannot on habeas corpus challenge pre-plea constitutional violations. Tollett v. Henderson, 411 U.S. 258, 266-67, 93 S.Ct. 1602 (1973); see also Moran v. Godinez, 57 F.3d 690, 700 (9th Cir.1994) ("As a general rule, one who voluntarily pleads guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations"). Such a petitioner may only contend that his guilty plea was not voluntary and intelligent (see e.g., Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 369 (1985); Boykin v. Alabama, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 1711-12 (1969)) or challenge the assistance of counsel under the Sixth Amendment. See, e.g., McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449 (1970); Tollett, 411 U.S. at 267, 93 S.Ct. at 1608; Hudson, 760 F.2d at 1030.

Representations of the defendant at a plea hearing, as well as any findings made by the judge accepting the plea, constitute a "formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "Solemn declarations in open court carry a strong presumption of verity." Id. Petitioner's guilty plea is valid unless he can demonstrate that it was induced by threats, misrepresentation, or by other improper promises. Brady v. United States, 397 U.S. 742, 755 (1970).

The state court transcripts in this case belie Petitioner's claim that he was induced into pleading guilty by counsel's assurance that he would be mandatorily paroled after serving seven years in custody. At the change of plea hearing, the following exchange occurred:

> THE COURT: You understand, sir - - I know you probably had an opportunity, I assume you have had, to discuss this matter with your attorney. And you understand the maximum sentence in this case would be life? Whether or not you would serve that term or how many years you would actually serve would be up to the California Department of Corrections. The maximum would

>
> be for the rest of your life. You understand that?
> [PETITIONER]: Yes, Your Honor.
> THE COURT: And understanding that, you understand that - - I know your attorney has probably speculated for you as to how long that probably would be, but you have no guarantee in that regard.  The only guarantee is that you would serve no more than life in state prison.  Understood?
> [PETITIONER]: Yes, Your Honor.

(RT of April 20, 1998, change of plea hearing, at 2-3.)

Petitioner subsequently acknowledged that he understood what life in prison meant and that he did not need any more time to discuss the matter with his attorney. (Id. at 3-4.)  The trial court clearly and unequivocally informed Petitioner that a life sentence with the possibility of parole meant he could serve his entire life and there was no guarantee, even if defense counsel predicted, that he would be paroled after seven years.  As stated above, representations of a defendant at a plea hearing, as well as any findings made by the judge accepting the plea, constitute a "formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

Petitioner's claim in his traverse that had the court inquired into the waiver, there is a strong probability that Petitioner would have explained to the court that he was accepting the plea based on counsel's advice that he would parole from prison sooner than life, is without merit.  Supplemental Traverse, at 18.  As stated above, Petitioner was advised to the contrary by the trial court and he was given ample opportunity, of which he rejected, to disclose any disbelief to the court and/or further advisement from his defense counsel.  That Petitioner's choice in hindsight was not to his benefit does not render his plea involuntary or counsel ineffective.

However, even if Petitioner's counsel informed him that he would be paroled in seven years, and Petitioner harbored such a belief, it was dispelled by the judge's remarks and advisement at the change of plea hearing.  As previously noted, the judge specifically instructed Petitioner that there was no guarantee to a parole date, and the only guaranteed sentence was that he would serve no more than life.  Petitioner repeatedly stated that he understood those terms and did not need further time to discuss it with his attorney.   The transcript is further supported by defense counsel's declaration in which he declares that he advised Petitioner as follows:

///

> I advised [Petitioner] he would be *eligible* for parole after he had served seven years. I advised him that his actual release date would be determined by the parole board. I advised him that his performance in the institution would be an important factor in the board's decision. Any appearance by the victim or someone from the D.A.'s office at his parole hearing would also be important. I advised him that his age would be a factor in his favor. I did not advise [Petitioner], nor have I ever advised any client in [Petitioner's] situation, that he was assured of release after seven years, or after any other period of time.

(Exhibit E, attached to Respondent's Answer, Court Doc. 16, at ¶ 8) (emphasis added.)

Accordingly, to the extent Petitioner is attempting to raise a due process challenge to the voluntariness of his guilty plea based on counsel's alleged representations regarding his life sentence, it is without merit and must be denied.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

These Findings and Recommendations are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 14, 2005**          /s/ Dennis L. Beck
3b142a                    UNITED STATES MAGISTRATE JUDGE